776 F.2d 628
 56 A.F.T.R.2d 85-6164, 85-2 USTC P 9701
 In the Matter of Lee J. KLEIN, a witness before the Special
September 1983 Grand Jury, Appellant.
Appeal of John H. WESTON, David M. Brown, Robert E. Smith,
Carl L. Rubin, Stephen M. Taylor, and Michael Y.
Sandborn, witnesses before the Special
September 1983 Grand Jury, Appellants.
Appeal of Harry Virgil MOHNEY, Lee J. Klein, and Burton H.
Gorelick, Intervenors-Appellants.
 Nos. 85-1894, 85-1996, 85-1997 and 85-2230.
 United States Court of Appeals,
Seventh Circuit.
 Argued Aug. 13, 1985.
Decided Aug. 16, 1985.
 
 John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal., for appellants.
 Veta M. Carney, Asst. U.S. Atty., Indianapolis, Ind., for appellees.
 Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 A grand jury in Indianapolis is investigating potential income tax, arson, and other offenses. The "targets" of this investigation include Harry Virgil Mohney, Burton H. Gorelick, Lee J. Klein, and Michael Y. Sandborn. The "subjects" of the investigation include Robert E. Smith. Klein, Sandborn, and Smith are attorneys. Each represents other targets, subjects, and witnesses.
 
 
 2
 In January and February 1985 the grand jury served subpoenas on seven attorneys--Klein, Sandborn, Smith, and four others who the Government regards simply as witnesses. Each subpoena called for the attorney to produce documents arising out of his representation of a target. One subpoena served on John H. Weston, for example, called for accounting ledgers concerning Klein and Mohney, for Weston's time records, bills, and memoranda showing when and where he met Mohney, for retainer contracts and similar documents, and "[a]ny and all business and/or financial books, records, and documents relating to Lee J. Klein, Harry Virgil Mohney, whether or not the ownership, control or involvement is reflected in the said documents." The subpoena served on David M. Brown called for "all documents relating to business and/or financial transactions involving, in any manner whatsoever, directly or indirectly, Harry V. Mohney, Lee J. Klein, and/or Burton C. Gorelick" from 1968 through the date of production. The subpoena served on Klein asked for "all documents relating to business and/or financial transactions involving, in any manner whatsoever, Harry V. Mohney and/or Burton H. Gorelick."
 
 
 3
 The attorneys moved to quash the subpoenas, arguing (among other things) that they impinged on the attorney-client relation and called for potentially incriminating documents. The prosecutor eliminated any problem of self-incrimination by obtaining orders granting use immunity for the act of production. See United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). The district court rejected the other arguments on the merits in two opinions. The first, filed on May 9, 1985, deals with Klein's subpoena alone. 608 F.Supp. 538 (S.D.Ind.1985). The second, on May 23, addressed the other six lawyers' claims in similar language. In each opinion the district court concluded that the attorneys must appear before the grand jury. If they believe that any document is covered by the attorney-client privilege, they must assert the privilege one document at a time. The judge declined to follow cases in other courts holding that the Government must establish the need for and relevance of any document it seeks out of the hands an attorney, whether or not the document is privileged. The district court also declined to stay its order enforcing the subpoenas, but the prosecutor voluntarily withheld enforcement of the subpoenas pending our decision. This court expedited consideration of the case.
 
 
 4
 * None of the attorneys has appeared before the grand jury. None has claimed that particular documents are privileged. No one has been held in contempt. There is therefore no "final decision," as that term usually is understood. A final decision in a subpoena case means an order holding a witness in contempt, see United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971).
 
 
 5
 The appellants maintain that we have jurisdiction under Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), which permitted the holder of a privilege to intervene in order to assert the privilege and to appeal from the rejection of the assertion. (The clients have intervened in this case.) The rejection of the claim is the final decision with respect to the intervenor, the Court reasoned; because the person summoned before the grand jury may testify rather than go to jail to support someone else's privilege, the rejection of the claim is final as a practical matter too. Like several other courts, this one has treated Perlman as a holding that clients always are entitled to appeal as soon as their attorneys are required to produce documents. In re November 1979 Grand Jury, 616 F.2d 1021, 1024-25 (7th Cir.1980), relying on Velsicol Chemical Corp. v. Parsons, 561 F.2d 671, 674 (7th Cir.1977), cert. denied, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). See also, e.g., In re Doe, 759 F.2d 968, 971 n. 1 (2d Cir.1985); In re Fine, 641 F.2d 199 (5th Cir.1981); In re FMC Corp., 604 F.2d 798 (3d Cir.1979).
 
 
 6
 The Government nevertheless asks us to dismiss this appeal for want of jurisdiction. It points out that the attorneys have not been before the grand jury at all, so that claims of privilege remain unresolved. Moreover, the language used in November 1979 Grand Jury was much broader than the case required; the documents were already in the hands of the prosecutor, so that review on appeal from an order permitting use of the documents was the only possible avenue of review. No private person could have been held in contempt--which was true in Perlman as well. Perlman relied in part on a conclusion that the rejection of an intervenor's claim is "final" with respect to the intervenor, a position the Supreme Court rejected in DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), when the intervenor is also a putative defendant. Although the Supreme Court has cited Perlman since DiBella, it has not reconsidered how much of Perlman's rationale survives.
 
 
 7
 Three circuits have rejected our opinion in Velsicol and held that Perlman permits an appeal in advance of a citation for contempt only when contempt is unlikely as a practical matter. In re Sealed Case, 655 F.2d 1298 (D.C.Cir.1981); In re Oberkoetter, 612 F.2d 15 (1st Cir.1980); National Super Spuds, Inc. v. New York Mercantile Exchange, 591 F.2d 174 (2d Cir.1979) (Friendly, J.). See also Comment, The Perlman Exception: Limitations Required by the Final Decision Rule, 49 U.Chi.L.Rev. 798 (1982). The Government asks us to follow these cases and limit Velsicol if not overrule it.
 
 
 8
 In this case four of the lawyers are suspects themselves, and they have every reason to resist disclosure. The non-suspect lawyers may not have personal interests, but they have an ethical duty to respect their clients' wishes concerning the privilege. If it is necessary that these attorneys suffer contempt in order to ensure that the clients have an opportunity for a decision on appeal, then the lawyers must follow this path.[1] It is therefore very likely that the lawyer-appellants will stand in contempt if claims of privilege should be made and rejected.
 
 
 9
 Cases such as Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), emphasize the importance of expedition in the criminal process. The final decision rule plays an essential role in moving things along. A requirement that the subject of a subpoena stand in contempt in order to obtain review serves two purposes. First, it sharpens the issues so that a single appellate review will be sufficient; we discuss this further in Part II. Second, it ensures that people raise only those claims that are sufficiently serious that they are willing to make a sacrifice to obtain appellate review. Self-interest cuts down dramatically on the number of appeals taken to obtain delay.
 
 
 10
 When people may appeal any order enforcing a subpoena, it is easy to oppose every subpoena and make broad claims, which the appellants in this case have done with gusto. The claims are very hard to resolve, because they lack the focus on particular documents and defenses that an adjudication in contempt would produce. Win or lose, the appellants obtain delay, which they may value highly. If they lose here, they can always make more particular claims of privilege and try again. In the meantime the targets are free, memories of other witnesses are fading, evidence is disappearing, the grand jury may have difficulty proceeding against other targets, and events may escape scrutiny as the statute of limitations takes its toll. Calandra v. United States, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), say in no uncertain terms that such delay should not be tolerated.
 
 
 11
 Nothing this court can do, however, could eliminate the conflict among the circuits on the question before us. The Supreme Court may consider the question before much longer. In the meantime, litigants' legitimate interest in the stable application of this court's precedents make us hesitate to disturb Velsicol. The rule of Velsicol also has its advantages, at least until the Supreme Court resolves the conflict. A jurisdictional rule that turns on whether the holder of the privilege can count on the holder of the documents to stand in contempt would require substantial factual inquiries in each case. Jurisdictional inquiries turning on the nuances of particular situations may be worse than rules allowing all appeals in a category; at least a rule allowing appeals permits this court quickly to reach the merits so that the grand jury may get about its business. Cf. United States v. MacDonald, 435 U.S. 850, 857-58 n. 6, 98 S.Ct. 1547, 1551 n. 6, 56 L.Ed.2d 18 (1978) (jurisdictional rules must be made by category of case, not by reference to the facts of particular cases).
 
 
 12
 The only stable rule therefore is that clients never may appeal until their lawyers have been found in contempt. But a rule of this sort would induce the clients to contend that simple enforcement of the subpoenas violated a "right" not to have the attorneys appear before the grand jury at all. The appellants make an argument of this character here. If there is such a right, it is lost by the fact of appearance, and an appeal could be justified under the rationale of Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), and cases permitting immediate appeals of invocations of absolute and qualified immunities. See Mitchell v. Forsyth, --- U.S. ----, 105 S.Ct. 2806, 2815-17, 86 L.Ed.2d 411 (1985) (qualified immunity); Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (constitutionally based absolute immunity); Lojuk v. Johnson, 770 F.2d 619 (7th Cir.1985) (other absolute immunity). Perhaps the best solution is to hold, as in Richardson v. United States, --- U.S. ----, 104 S.Ct. 3081, 3086 n. 6, 82 L.Ed.2d 242 (1984), that there is jurisdiction in the first case alleging a "right not to be haled before the grand jury," but that if the claim is rejected future similar claims would not be colorable enough to support jurisdiction. We need not pursue the matter further, however. The argument derived from Abney and Mitchell, coupled with the holding of Velsicol, requires that we consider the merits.
 
 II
 
 13
 The appellants ask us to join In re Doe, 759 F.2d 968 (2d Cir.1985), in holding that before a lawyer need respond to a grand jury's questions or produce documents about a client, the prosecutor must first show the relevance of and need for the information.[2] "Need" in the sense the Second Circuit used it in Doe means more than just the utility of the documents in filling evidentiary gaps; the Second Circuit requires the prosecutor to show that the grand jury cannot obtain the information in some other way. According to Doe, the Sixth Amendment requires this result. If the grand jury may obtain evidence from lawyers too easily, the court reasoned, the lawyers may be disqualified from representing their clients in subsequent criminal cases, and the deprivation of counsel of the client's choice would violate the Sixth Amendment's guarantee of counsel. The opinion also invoked Fed.R.Crim.P. 17(c), stating that the court of appeals possesses a general supervisory power over the conduct of grand juries.
 
 
 14
 The district court thought such an argument foreclosed in this circuit. It relied on In re Walsh, 623 F.2d 489 (7th Cir.), cert. denied, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). Walsh indeed disposes of most of appellants' claims. We held in Walsh that the prosecution does not have to show the "need" for a document in order to call an attorney before a grand jury. The attorney must appear, Walsh held, and assert the privilege document-by-document. If an evaluation of the claim of privilege requires an assessment of "need," as the work product privilege does, see Upjohn Co. v. United States, 449 U.S. 383, 399-402, 101 S.Ct. 677, 687-689, 66 L.Ed.2d 584 (1981), then the context will give shape to the arguments. The Government need not anticipate such controversies, however.
 
 
 15
 In re Sinadinos, 760 F.2d 167 (7th Cir.1985), reaffirms Walsh. We concluded in Sinadinos that a requirement of "need" for evidence would have no principled content. A grand jury tracks down leads, and even innocent-looking information may be useful. If the grand jury has some information on a subject, it may seek more to confirm or contradict what it has. How much information is "enough" is a matter for the judgment of the grand jurors and the prosecutors rather than the courts. 760 F.2d at 170-71. See also United States v. Dionisio, 410 U.S. 1, 15-16, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973).
 
 
 16
 Neither Walsh nor Sinadinos considered an argument of the sort that persuaded the Second Circuit in Doe: that any inquiry, even into unprivileged documents, might lead to the lawyer's disqualification and thereby violate the Sixth Amendment. This is an unsatisfactory argument. Why would the disclosure of unprivileged documents lead to the lawyer's disqualification? It might, if the Government called the lawyer at trial, but this is not the most likely consequence of the attorney's appearance before the grand jury. For more than 100 years courts have believed that the attorney-client and work product privileges provide enough protection of the client's interest in obtaining legal advice. We are loath to establish requirements going beyond the privilege on the off chance that they might prevent occasional disqualifications.[3]
 
 
 17
 Even if the appearance of a lawyer before a grand jury leads to that lawyer's removal as counsel for a suspect, the removal does not necessarily violate the Sixth Amendment. The suspect has no right to counsel before the grand jury. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Although the Sixth Amendment creates a right to counsel at trial, the Constitution does not demand that every defendant receive the counsel he most desires. See Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (district court did not violate the Sixth Amendment by requiring defendant to go to trial with adequate counsel although defendant preferred a different lawyer); United States v. Ely, 719 F.2d 902 (7th Cir.1983), cert. denied, 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984) (no right to appointed counsel of choice). The right is to adequate counsel, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), not to the best lawyer money can buy or a particular lawyer. See United States v. Flanagan, 679 F.2d 1072 (3d Cir.1982) (sustaining against constitutional attack an order disqualifying counsel in a criminal case), rev'd on jurisdictional grounds, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984).
 
 
 18
 On several occasions the Supreme Court has said in dicta that a defendant must have "a fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). See also, e.g., Crooker v. California, 357 U.S. 433, 439, 78 S.Ct. 1287, 1291, 2 L.Ed.2d 1448 (1958); Glasser v. United States, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). Statements such as the one in Powell reflect the fact that the choice of counsel ordinarily is one for the accused alone. If the defendant and the lawyer can strike a voluntary arrangement, that is likely to be the most satisfactory one for the defendant. Unless the Government has a strong reason for interfering with this presumptively satisfactory representation, it may not do so. But this has never been thought to permit a defendant to elect as his representative anyone he likes. The state may enact neutral rules--rules of ethics that may cause disqualifications or disbarments as well as rules limiting entry to the profession--that diminish somewhat the pool of lawyers from which a person may select.
 
 
 19
 An effort by the Government to strip a suspect of a lawyer with unique knowledge or abilities would present constitutional difficulties; the Due Process Clause of the Fifth Amendment might prohibit an effort by the Government to impose on the defendant the expense of paying multiple lawyers to prepare for trial in order to have a single defense. We need not consider these possibilities, however, for no lawyer has been disqualified.
 
 
 20
 The abstractness of the issue presented to us dominates the case. We are asked to say that the Government always must show particularized need because some day subpoenas might injure some clients. We do not know what privileges, if any, apply to the documents the grand jury seeks here. We do not know what the Government might be able to show in response to a claim of privilege. We do not know who will be indicted (if anyone will be). We do not know which lawyers any defendants will retain in the future or whether the subpoenas will create any difficulties for those representations. The appellants want us to stop a grand jury investigation dead in its tracks and pass judgment on these abstractions. That is a thoroughly bad idea--not only because abstract declarations may be ill considered but also because the putative defendants can be fully protected no matter what the grand jury does.
 
 
 21
 If the attorneys' appearance before the grand jury does not hamper any subsequent representation of the putative defendants, then there will be no further problem. If the grand jury indicts one of the three intervenors, and if the appearance of that defendant's lawyer before the grand jury leads to a disqualification or an irreparably strained lawyer-client relation, there will be time enough to supply a remedy. The defendant may move to dismiss the indictment. If the prosecutor's persistence in obtaining information from the lawyer indeed offended against the Sixth Amendment and it is impossible to cure the defect, the defendant will go free. If there should be no violation, or there should be a violation without prejudice, then the prosecution could proceed. On the basis of a similar argument the Supreme Court held in Flanagan that a defendant must wait until after trial to appeal a district court's order disqualifying his preferred counsel. The disqualification may not be error; any error may be corrected on appeal (if it warrants reversal) or dismissed as harmless. Things are the same here.
 
 
 22
 The approach of Flanagan is especially appropriate in this appeal from proceedings in the midst of an investigation by a grand jury. Calandra and Cobbledick teach us not to interrupt such investigations if any claim of error can be presented at trial. This grand jury may not indict any of the three intervening clients. If it does, each will be able to litigate before and after trial whatever objection under the Sixth Amendment the subpoena may create. Calandra, Cobbledick, and other cases such as Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), also establish that we should not use any "supervisory power" over the grand jury an appellate court may possess. The Supreme Court has told us that grand jury proceedings should be swift and unhindered. General concerns about the rights at trial of putative defendants who may never be indicted do not justify a departure from the approach of these cases.
 
 
 23
 We therefore hold that the grand jury may call a lawyer as a witness and request documents without making any preliminary showing of need. The lawyer may assert any privileges the client possesses, and he must do so, as Walsh holds, one document at a time. The parties may join issue on the extent of the privilege and whether exceptions (such as joint participation in crime) apply. "Necessity" may become important at this stage if, for example, the grand jury seeks to overcome the work product privilege. Concern about the possible effects of disclosure on legal representation at trial is not a reason--apart from the extent to which it is reflected in the privilege--to resist disclosure. Only after the district judge has resolved all claims of privilege may the intervening client appeal under Velsicol.
 
 III
 
 24
 Two other matters call for short discussion. The first is the issuance by the Department of Justice on July 24, 1985, of new guidelines for subpoenas to attorneys. Under these guidelines all subpoenas served on counsel require the approval of the Assistant Attorney for the Criminal Division or his delegate, and the subpoena must seek only information "reasonably needed for the successful completion of the investigation or prosecution." The prosecutor must seek the information from other sources before turning to the attorney, subpoenas must be "narrowly drawn," and "the need for the information must outweigh the risk that the attorney will be disqualified from representation of the client as a result of having to testify against the client."
 
 
 25
 The appellants maintain that they prevail under these guidelines. The prosecutor replies that they do not apply to subpoenas issued before July 24, and that the Assistant Attorney General has in any event reviewed these subpoenas and found them consistent with the guidelines. Cf. United States v. O'Malley, 764 F.2d 38, 40-41 (1st Cir.1985) (collecting cases holding that a court may not look behind the Assistant Attorney General's approval of an application for a wiretap). We need not debate such questions, because we do not read the guidelines to establish rights in favor of witnesses. See United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). The subpoena issues from the grand jury and is enforced by a court; it does not draw its force from the will of the Department of Justice. Guidelines of this sort are similar to guidelines about the exercise of prosecutorial discretion. They may enable the Department to control those in the field, but once an agent of the Department acts, the legal status of that act depends on other rules of law. The Petite Policy constraining successive state and federal prosecutions does not entitle a defendant to the dismissal of an indictment obtained in violation of the policy--but it permits the Department of Justice to withdraw a prosecution commenced in violation of its rules for the conduct of U.S. Attorneys. See Rinaldi v. United States, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977).
 
 
 26
 The guidelines are significant nonetheless in the sense that they recognize the danger, on which we remarked in Walsh, that could be posed by unbridled subpoenas of counsel. As we said in Sinadinos, the principal control of subpoenas must come from the grand jurors and the prosecutors, who can judge which information is needed in the investigation and how much is enough, rather than from the courts. These guidelines are a careful and responsible effort by the Department of Justice to reduce the danger of jeopardizing the constitutional rights of counsel. Carefully applied they will be useful. But the prosecutors, not the courts, are responsible for their application and enforcement.
 
 
 27
 The second matter is the appellants' argument that these subpoenas should not be enforced at all because they are vague, overbroad, and call for materials "indirectly" relating to the named targets. To the extent this line of argument is based on the special concern for the attorney-client relationship, it appears to be a plea for the reconsideration of Walsh, which held that counsel must object one document at a time. We decline to revisit Walsh. Even Presidents must produce documents and make particular claims of privilege in response to subpoenas. United States v. Nixon, 418 U.S. 683, 714-16, 94 S.Ct. 3090, 3110-3111, 41 L.Ed.2d 1039 (1974).
 
 
 28
 To the extent it is a more traditional argument that the subpoenas are burdensome, and their issuance an abuse of process, the answer is that the district court gave careful attention to appellants' arguments. The prosecutor provided the district court with numerous in camera submissions. The district court was entitled to conclude from these that the targets may have participated in criminal activities involving several entities in which ownership interests may not have been expressly recorded. For this reason subpoenas calling for documents "indirectly" related to a target may have been appropriate devices. We do not say whether they were or not. The district courts possess considerable discretion in deciding whether subpoenas are vague, overbroad, or oppressive. E.g., Margoles v. United States, 402 F.2d 450, 451-52 (7th Cir.1968). We are confident that in exercising this discretion district judges will scrutinize carefully subpoenas to attorneys and protect fully the legitimate confidentiality of the attorney-client relationship. We are also confident, however, that the court did not abuse its discretion or commit a clear error of judgment here.
 
 
 29
 This grand jury has been delayed for a significant period. Even under our decision today, proceedings on particular assertions of privilege may lie ahead. Further delay is inappropriate. The judgments are affirmed. The mandates will issue today.
 
 
 
 [1]
 Disciplinary Rule 4-101(C)(2) permits a lawyer to reveal a confidence when required by an order of the court. But the lawyer has a corresponding obligation to ensure that the order is valid, and it may be necessary to take steps, including contempt, to test the validity of the order. See In re Attorney General, 596 F.2d 58 (2d Cir.1979), in which Attorney General Bell accepted a citation for contempt in order to preserve his client's position
 
 
 [2]
 Appellants state that the First and Fourth Circuits also require this showing. A panel of the Fourth Circuit so held, In re Harvey, 676 F.2d 1005 (4th Cir.1982), but this decision was withdrawn by the en banc court when Harvey became a fugitive, see 697 F.2d 112 (1982). Other panels of the Fourth Circuit have declined to follow Harvey. See United States v. Morchower, 718 F.2d 1093 (4th Cir.1983), discussed in In re Doe, supra, 759 F.2d at 978 n. 2 (Timbers, J., dissenting). A panel of the First Circuit announced a similar rule in In re Grand Jury Matters, 751 F.2d 13 (1st Cir.1984), but that court has explained that Grand Jury Matters was based on a number of "unique" considerations, including the facts that the attorneys were then defending clients in a criminal trial and that the district court explicitly found that the subpoenas were designed to harass. In re Wilson, 760 F.2d 26, 27 (1st Cir.1985). Two circuits have rejected Harvey (and therefore Doe ) on the merits. In re Schofield, 721 F.2d 1221, 1222 n. 1 (9th Cir.1983); In re Freeman, 708 F.2d 1571, 1575 (11th Cir.1983). See also In re Doe, 754 F.2d 154 (6th Cir.1985), which rejects a "necessity" test albeit without expressly repudiating Harvey. The Second Circuit stands alone. On July 16, 1985, the Second Circuit granted rehearing en banc in Doe, so the status of even that precedent is shaky
 
 
 [3]
 Of course, if the district court finds that a subpoena is sought for the purpose of disrupting the relationship between a target and his attorney, then the court could in its discretion quash the subpoena under Fed.R.Crim.P. 17(c) as unreasonable or oppressive. See In re Doe, 759 F.2d 968, 986 (2d Cir.1985) (Timbers, J., dissenting)