**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Franklyn G. PERRY,
Defendant–Appellant.**

No. 85–1046.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1988.

Decided Sept. 22, 1988.

G. David Robertson and Lawrence J. Semenza, Law Offices of Lawrence J. Semenza, Reno, Nev., for defendant-appellant.

Gail Brodfuehrer, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before KOELSCH, NOONAN and O'SCANNLAIN, Circuit Judges.

KOELSCH, Circuit Judge:

I  Sixth Amendment Right to Counsel

Part One of this appeal presents the troublesome question whether the post-indictment service of a grand jury subpoena on a target's counsel constitutes a per se violation of the Sixth Amendment. Although we do not condone such conduct, we are constrained by Supreme Court and Ninth Circuit precedent to hold that the per se rule of prejudice is inapplicable on these facts.

### A.

The government's apparently increasing use of grand jury subpoenas on a target's counsel, both pre- and post-indictment, has been the subject of much comment in the last few years.[1] The practice has been almost universally criticized by courts, commentators and the defense bar because it is viewed as a tool of prosecutorial abuse and as an unethical tactical device US Attorneys employ to go on a "fishing expedition" with legal counsel without first pursuing alternative avenues to get the information. Many feel, and with some justification, that whatever benefit the government derives from this practice comes at the direct expense of the attorney-client relationship. Among the perceived costs, for example, are the potential loss of a client's choice of counsel should the latter be compelled to testify at the trial and the potential chilling effect upon the client's trust in his counsel's loyalty.

The Department of Justice took note of the situation in 1985, shortly after DOJ statistics revealed the increasing use of this type of subpoena. In July of that year, under the tutorage of Stephen S. Trott (now a member of this court), it issued a new section of the United States Attorney's Manual entitled "Policy With Regard to the Issuance of Grand Jury or Trial Subpoena to Attorneys for Information Relating to the Representation of Clients."[2] United States Attorneys' Manual § 9–2.161(a) (July 18, 1985). In substance, the guidelines seek to ensure that subpoenas on counsel issue only in appropriate contexts and subject to certain safeguards. They require the prosecutor to obtain the approval of the Assistant Attorney General in charge of the Criminal Division for issuance of all subpoenas served on counsel at any time; the subpoena must seek only information "reasonably needed for the successful completion of the investigation or prosecution"; and, the prosecutor must establish that he has sought alterna-

---

1. See Genego, *Risky Business: The Hazards of Being a Criminal Defense Lawyer,* 1 Crim.Just. 2 (Spring 1986); Pierce and Colamarino, *Defense Counsel as a Witness for the Prosecution: Curbing the Practice of Issuing Grand Jury Subpoenas to Counsel for Targets of Investigations,* 36 Hastings L.J. 821 (1985); Zwerling, *Federal Grand Juries v. Attorney Independence and the Attorney–Client Privilege,* 27 Hastings L.J. 1263 (1976); Note, *Grand Jury Subpoenas of a Target's Attorney: The Need for a Preliminary Showing,* 20 Ga.L.Rev. 747 (1986).

2. Perry's trial predated promulgation of the DOJ Guidelines. We make reference to them and to the ABA Recommendation in our discussion, however, because they confirm our view that the government's conduct in this case was indeed improper. For a reprint of the full text of the guidelines, *see In Re Grand Jury Subpoena To Attorney (Under Seal),* 679 F.Supp. 1403, 1408 n. 15 (N.D.W.Va.1988).

tive sources first and that the need for the information outweighs the risk that the attorney will be disqualified. Taking the matter one step further, the American Bar Association House of Delegates passed a resolution in February, 1986 urging the requirement of a non-adversarial judicial approval prior to issuance of subpoenas of legal counsel. And in February of this year, the ABA House of Delegates, responding to the continuing need for protection, changed their recommendation to urge instead prior adversarial judicial proceedings.

The courts' reactions have been mixed. To balance the resulting tension between the policies underlying the grand jury process and the protected attorney-client relationship, at least one federal court has, under its supervisory powers, adopted regulations requiring prior judicial approval before issuance of a subpoena both pre- and post-indictment on a target's counsel. *See United States v. Klubock,* 832 F.2d 664 (1st Cir.1987).

However, this circuit has not. In *In re Grand Jury Proceeding (Schofield),* 721 F.2d 1221 (9th Cir.1983), we refused to require such a preliminary showing in the pre-indictment setting because doing so would "not advance the administration of justice," *id.* at 1223 (rejecting the Fourth Circuit's rationale in *In Re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005, *vacated and withdrawn,* 697 F.2d 112 (4th Cir.1982) (en banc)), and because *Harvey* "conflicted with this circuit's narrow con-

struction of the supervisory power of district courts over grand juries." *Id.* at 1222 n. 1. *See United States v. Wilson,* 614 F.2d 1224, 1227–28 (9th Cir.1980) (reiterating the narrow scope of this circuit's supervisory power over grand jury proceedings); *see also In the Matter of Klein,* 776 F.2d 628, 633 (7th Cir.1985) (rejecting need for preliminary showing in the pre-indictment context); *In re Grand Jury Proceedings (Weiner),* 754 F.2d 154, 156 (6th Cir.1985) (same); *In re Grand Jury Proceedings (Freeman),* 708 F.2d 1571, 1575 (11th Cir. 1983) (same). And in *Tornay v. United States,* 840 F.2d 1424 (9th Cir.1988), we adhered to that rule, postponing the question of the need for such a showing in the post-indictment setting for a future day. *But cf. In Re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238 (2nd Cir 1985) (en banc), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986) (rejecting requirement to show in both pre- and post-indictment contexts).

■ It is sufficient for our purposes here to label the government's conduct in this case as clearly wrongful.[3] Five days before trial commenced, the government subpoenaed Perry's trial counsel to appear before a federal grand jury. The subpoena directed counsel to produce all documentation relating to Perry's fee arrangement. Notwithstanding the apparent unprivileged nature of the information sought,[4] the timing and circumstances surrounding the issuance of the subpoena strongly suggest an improper motive.[5] But because no mo-

---

3. Because Perry's trial took place before promulgation of the DOJ Guidelines or the ABA's recommendations, we are not confronted with a situation where the US Attorney clearly violated any established rules. And even had the guidelines been in force, we note that the guidelines themselves provide that they "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice." *See Klein,* 776 F.2d at 635. We express no opinion on whether we would have found the government's conduct any more "egregious" or "wrongful" had the regulations been in force.

4. Fee information is ordinarily not privileged. *In Re Osterhoudt,* 722 F.2d 591, 593 (9th Cir. 1983). There is no suggestion here that the information sought comes within the narrow exception to the general rule. *See Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960) (discussed in *Osterhoudt,* 722 F.2d at 593).

5. The subpoena issued shortly after the court refused to grant the government a *Nebbia* hearing to have both Perry and his counsel testify regarding the source of funds being used to pay for the counsel's representation. *See United States v. Nebbia,* 357 F.2d 303 (2d Cir.1966). The government's motion for the pre-trial hearing gave two reasons for the request: to determine (1) "whether such funds used by the defendant should be in the control of the bank-

tion to quash was made, our inquiry is limited to determining whether such government conduct violated Perry's Sixth Amendment right to effective assistance of counsel.

### B.

■ The starting point for the analysis is *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) wherein the Court summarized the framework for evaluating Sixth Amendment claims. In *Strickland,* the Court made it plain that a conviction will not be disturbed for ineffective assistance of counsel unless the party seeking to set aside the conviction can show that counsel's performance was "deficient", i.e., "below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Id.* at 687–88, 104 S.Ct. at 2064–65. There are only two exceptions to the requirement of showing prejudice. The first typically arises in the traditional conflict of interest context—when an attorney represents multiple defendants with potentially divergent interests. Reiterating the rule announced in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court said that defendants claiming ineffective assistance of counsel based on counsel's alleged conflict of interest need only show that counsel " 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler,* 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718 (footnote omitted)). Upon such a showing, which is typically made in a hearing on a 28 U.S.C. § 2255 motion, prejudice will be presumed. *E.g., United States v. Hearst,* 638 F.2d 1190 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

The second exception applies in only a narrow class of cases which trigger the "per se" rule of prejudice. In these cases, prejudice is presumed without any showing at all. Cases in which the per se rule applies are those in which there has been an actual or constructive denial of assistance, *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, or in which the state [or federal] authorities interfere with counsel's assistance in such a way that "prejudice ... is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* (citing *United States v. Cronic,* 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657 (1984)).

Perry has not brought a section 2255 motion to attack his conviction. He argues the *Cuyler* rule is not applicable to his Sixth Amendment claim because the conflict of interest created by issuance of the subpoena was "put upon" his counsel by the government's actions. He reasons that the government's conduct is sufficiently "egregious" to bring it within the operation of the per se rule of prejudice. We disagree.

Not all government interference triggers the per se rule. The common thread in cases where the government's conduct was found to be "egregious" is conduct which jeopardizes the integrity of the legal process. Surreptitious eavesdropping by a government agent is illustrative. *United States v. Irwin,* 612 F.2d 1182, 1189 n. 18 (9th Cir.1980) (citing *United States v. Orman,* 417 F.Supp. 1126 (D.Colo.1976)). By intercepting confidential communications made between an attorney and his client, the prosecution circumvents the adversarial process. *See United States v. Davis,* 646 F.2d 1298, 1303 n. 8 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Gartner,* 518 F.2d 633, 637 (2nd Cir.) (pre-*Cronic* case expressing similar justification for presuming

---

ruptcy trustee who has been appointed to protect the interests of defendant's creditors; or (2) if they are not subject to the trustee's control, whether they are from a legal source, and not the fruits of the illegal fraudulent scheme the defendant has been indicted for operating." Perry opposed the motion claiming that the government's request was an "unprecedented at-

tempt to obtain privileged information regarding an ongoing criminal matter under the guise of concern for the integrity of the Bankruptcy court ... [and] ... to deprive Mr. Perry of his constitutional rights to counsel of his choice...." The district court did not make any findings of fact or conclusions of law in its order denying the motion.

prejudice), *cert. denied,* 423 U.S. 915, 96 S.Ct. 222, 46 L.Ed.2d 144 (1975). As the Court said in *Cronic,* "if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." 466 U.S. at 656–57, 104 S.Ct. at 2045–46. That guarantee, the Court defined, was that every defendant would be "assure[d] fairness in the adversary criminal process," *Id.* at 656, 104 S.Ct. at 2045 (citing *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981)), and thus that the accused would be assured "counsel acting in the role of an advocate." *Id.* (citing *Anders v. California,* 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967)). Without such effective representation, a "serious risk of injustice infects the trial itself." *Id.* (quoting *Cuyler,* 446 U.S. at 343, 100 S.Ct. at 1715).

It does not follow that the post-indictment service of a grand jury subpoena on a target's counsel for production of fee information jeopardizes the integrity of the legal process. To hold otherwise would create an absolute rule prohibiting a grand jury from seeking all types of information about a target's actions from his counsel. We decline to adopt such a rule. As the First Circuit said in *In Re Grand Jury Matters,* 751 F.2d 13 (1st Cir.1984) (motion to quash), "[t]here can be no absolute rule that frees an attorney, merely because he is such, to refuse to give unprivileged evidence to a grand jury. Even when trials are pending, the grand jury's right to unprivileged evidence may outweigh the right of the defense bar and its clients not to be disturbed." *Id.* at 19. And as we have previously recognized, the right to retain counsel of one's choice is not absolute. *See United States v. Ray,* 731 F.2d 1361, 1365 (9th Cir.1984); *accord Klein,* 776 F.2d at 633.

We are indeed mindful that subjecting counsel to grand jury process potentially implicates serious Sixth Amendment con-

cerns. *Accord In Re Grand Jury Matters,* 751 F.2d at 18. But our decision is guided by our confidence that the potential for prejudice is not "so likely that case-by-case inquiry into prejudice is not worth the cost."

We disagree that the risk of disqualification is so great that allowing service of a grand jury subpoena on a target's counsel will inevitably enable the government to control the target's choice of counsel. *See Klein,* 776 F.2d at 633. In the pre-indictment context, we flatly held this risk insufficient to warrant a preliminary showing of need or relevance prior to enforcement of the subpoena. *Osterhoudt,* 722 F.2d 591, 594 (9th Cir.1983). That an indictment has already issued does not for that reason and without more increase the risk of disqualification. *Doe,* 781 F.2d at 250, 252. As noted above, nothing about the fee information suggests it to be privileged; thus the attorney's interest in complying with the subpoena and protecting the confidences of his client do not conflict. We are unaware of any ethical canon requiring an attorney to withdraw from representation merely for complying with a subpoena to produce unprivileged information. *Cf. Tornay,* 840 F.2d at 1429 (pre-indictment context involving an IRS summons); *Doe,* 781 F.2d at 245; *Klein,* 776 F.2d at 633.

■ As the facts of this case illustrate, there will be many situations where an attorney's compliance with the subpoena will not require disqualification. Here, counsel brought the matter to the attention of the district court when he sought a continuance so he could testify before the grand jury. At no time did he or the court suggest that he should withdraw.[6] Because only those interferences which actually have an impact on the reliability of the verdict may impugn a conviction, *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046, we must conclude that the mere possibility of an actual conflict created by service of a

---

**6.** We are, however, unable to find that Perry has waived his right to complain of conflict-free representation on this record. Although the court was made aware of the subpoena, the court never informed Perry of the risk brought

about by the potential conflict and thus never secured from Perry a knowing and voluntary waiver "on the record after adequate warning". *Mannhalt v. Reed,* 847 F.2d 576, 584, 580–81 (9th Cir.1988).

grand jury subpoena upon a target's counsel is insufficient to disturb a conviction. *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

We also disagree that allowing service of the subpoena is certain to chill the attorney-client relationship or so greatly disrupt and distract the attorney that his assistance will be ineffective. These same reasons we also found in *Osterhoudt* were insufficient to justify a preliminary showing of need or relevance in the pre-indictment context. *Accord Doe,* 781 F.2d at 243. That the Sixth Amendment right to counsel has attached in the post-indictment context does not render these risks any more certain. The fee information remains beyond the bounds of the attorney-client privilege. Consequently, the probability is plain that compelling disclosure of this information would not inhibit the free flow of confidential communications made in the course of legal representation.[7] If compliance, for whatever reason, would necessitate disclosure of confidential information or revelation of the defense's strategy, or if the timing of the subpoena is disruptive of counsel's preparation or is harassing, a continuance or motion to quash can be sought. *Id.* at 250; *see, e.g., In re Grand Jury Matters,* 751 F.2d at 18–19; *Klein,* 776 F.2d at 633 n. 3. But as this court said in *United States v. Freeman,* "merely requiring defendant's lawyer to testify alone does not constitute a material interference with his function as an advocate...." 519 F.2d 67, 68 (9th Cir.1975).

In sum, while we are clear that the government's conduct was wrongful, we are equally clear that it was not the sort of egregious conduct required to trigger the per se rule. Any harm done by issuance of a grand jury subpoena on a target's counsel can be remedied by appropriate procedures for motions to quash or continuances. In the unlikely event neither a motion for continuance or to quash the subpoena is sought or both are denied, the defendant can still attack his conviction either by making a *Cuyler* showing in a section 2255 hearing or by demonstrating actual prejudice. The per se rule, however, is inapplicable on the facts in this case: the potential for prejudice is just that—potential.

## II Sixth Amendment Right to a Fair Trial

■ A careful analysis of the remaining assignments relating to the alleged denial of fair trial manifests the conclusion that none has merit. The first assignment relates to the admission of a bankruptcy court's determination that certain transfers of property to Perry's relatives were fraudulent conveyances. As the Tenth Circuit noted in *Johnson v. Colt Industries Operating Corp.,* 797 F.2d 1530, 1534 (10th Cir. 1986), admission of a prior judicial opinion as substantive evidence of a fact then in issue presents the danger that a jury may give the judicial opinion undue weight or be confused, believing the earlier court's findings somehow binding on it.[8] But because Perry made no objection to the admission of this testimony below, we are compelled to review for plain error. We find none.

The challenged testimony was not, as Perry urges, offered as substantive proof

---

**7.** Rejecting these same arguments as insufficient to justify application of the attorney-client privilege, we said in *Tornay,* "[w]e do not believe that clients, knowing that their attorney may be compelled to testify about the amount, date, and form of fees paid, would be inhibited from disclosing fully information needed for effective legal representation. Nor do we accept a generalization that clients feel less free to disclose once it becomes apparent that their attorney's testimony may cause adverse results." 840 F.2d at 1428–29.

**8.** *Johnson* was a products liability suit in which the plaintiff, owner and purchaser of a gun, sued Colt Industries, the manufacturer, for negligent design. The plaintiff's theory was that

the gun's design caused the gun to discharge when dropped, even when the gun was not cocked. To rebut the defendant's claim that it was unaware of other similar accidents, the plaintiff introduced into evidence the fact of another lawsuit, also based on the "drop-kick" defect, in which the plaintiff had prevailed. The court found its admission, over objection, erroneous. 797 F.2d at 1534. To minimize these dangers, the court reasoned, a judicial opinion should be admitted as substantive evidence of a similar accident "only in the rarest of cases when no other form of evidence is available and then only with detailed limiting instructions." *Id.*

of a fraudulent scheme.[9] A review of the record shows that the testimony was offered only to show that Perry was the true owner of certain properties nominally owned by his relatives. *See Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 735, 98 L.Ed.2d 862 (1988) ("a judgment, insofar as it fixes property rights, should be admissible as the official record of such rights, just like other documents of title"). This evidence, in turn, was relevant to prove that Perry had concealed his assets. From it, the jury could infer that Perry had intended to evade federal income taxes, charges for which he was on trial. *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

■ Moreover, if there was any confusion that the bankruptcy court's determination showed a pattern of fraud, it was largely attributable to the defense's cross-examination of the bankruptcy trustee. All that had been brought out on direct examination was the fact that the transfers of certain properties had been set aside as fraudulent conveyances. On cross-examination, defense counsel asked whether there had been any "adjudication of fraudulent misrepresentations in the inducement to obtain the funds to buy the property. . . ." The government immediately objected on the ground that the trustee was testifying only with respect to fraudulent conveyances, not about the fraudulent scheme charged in the mail and wire fraud counts. The court sustained the objection.

Perry complains that in the absence of a limiting instruction, the jury could not have understood the technical distinction. While it is true that there may have been some confusion, it cannot be said the prejudice, if any, was undue: this determination, of course, is subject to proper balancing which the trial court could have made had defense counsel made a timely objection. Counsel offers no explanation, however, for neither having objected to the admission of the challenged testimony nor for failing to re-

quest a limiting instruction. Counsel's failure to act puts the reviewing court, not in the position of asking how it would have balanced, but whether the admission of the evidence was so prejudicial that plain error occurred.

We have declined to find error in a similar situation when applying the abuse of discretion standard. *See Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.*, 680 F.2d 573 (9th Cir. 1982) (finding no error in the court's taking judicial notice of two consent judgments entered against and a prior conviction of one of the principals of the group where the evidence was relevant to show the principal's familiarity with commodities laws and was admissible to rebut his claim that the group's violations were innocent); *see also Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281 (8th Cir.1984) (admission of prior violation not error).

Accordingly, we conclude that neither the admission of the evidence nor the failure to give a limiting instruction *sua sponte* amounts to plain error. The evidence was clearly relevant to (and perhaps necessary to establish an element of) the tax evasion issue; the government in effect gave the evidence a limiting use in its objection to the defendant's cross-examination of the bankruptcy trustee. While it would have been proper for the court to have given a cautionary instruction nonetheless, it was not reversible error not to have done so. *See United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir.1978).

■ The second assignment is that the prosecutor impermissibly inquired into the details of Perry's prior misdemeanor convictions for embezzlement and obtaining money under false pretenses. However, here Perry "opened the door" to detailed cross-examination when he attempted to "explain away" those convictions by offering his own version of the underlying facts. *See, e.g., United States v. Amahia*, 825

---

**9.** An essential element of both the wire and mail fraud charges for which Perry was indicted was that Perry had committed an "act or acts of having devised or intended to devise a scheme or artifice to defraud or to attempt to defraud investors out of money or property by means of false or fraudulent pretenses or representations."

F.2d 177, 180 (8th Cir.1987); *United States v. Barnes,* 622 F.2d 107, 109 (5th Cir.1980); *United States v. Wolf,* 561 F.2d 1376, 1381 (10th Cir.1977).[10]

■ And the final assignment is that the prosecutor impermissibly commented on Perry's post-arrest silence when he asked on cross-examination questions which, in substance, asked whether the version of events to which Perry was testifying to at trial was the same version of events of which he told the authorities earlier. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Again Perry himself invited the inquiry: he had made post-arrest statements which were "arguably inconsistent" with his testimony at trial.

AFFIRMED.

---

**10.** There is some support, however, for Perry's argument that counsel's emphasis on Perry's prior conviction during his closing arguments improperly suggested evidence of Perry's bad character. In his summation, counsel for the prosecution said,

> The man's whole life had been geared at defrauding people. We see that as early as 1979 on this conviction for obtaining money under false pretenses. We see this conviction right here for embezzlement. Is that the life of a man who doesn't intend to defraud?

But granting counsel was overzealous, this isolated statement does not constitute plain error. Unlike in those cases cited by Perry in which reversible error stemmed in part from a counsel's character attacks, *see, e.g., United States v. Roenigk,* 810 F.2d 809 (8th Cir.1987), there are no other egregious errors which combine with this improper suggestion to amount to plain error. Also distinguishing those cases from the instant one, the evidence of Perry's guilt was overwhelming.