Jack BENDER, Plaintiff-Respondent,

v.

COLT INDUSTRIES, INC., and Goodman's Inc., Defendants,

Colt Industries, Inc., Defendant-Appellant.

No. 35698.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 23, 1974.

Robert C. Ely, Robertson, Ely & Wieland, St. Louis, for defendant-appellant.

Robert F. Summers, Klamen, Summers & Compton, St. Louis, for plaintiff-respondent.

STEWART, Judge.

This is an action for damages for personal injuries sustained by respondent, hereafter referred to as plaintiff, when a revolver purchased by him from defendant, Goodman's, Inc., a retailer, and manufactured by defendant-appellant, Colt Industries, Inc., hereinafter referred to as defendant, discharged when it fell out of plaintiff's pocket onto a concrete platform. The gun was Colt's Single Action Army Revolver. The cause was pleaded and submitted on the theory of strict liability. The amended petition alleged that the trigger and sear of the gun "was fragile, weak and therefore, unable to withstand reasonably foreseeable or anticipated jolts". There was a jury verdict for plaintiff in the sum of $15,000.00 against defendant, Colt Industries, Inc. and in favor of defendant, Goodman's, Inc. We affirm that judgment.

Plaintiff, a gun enthusiast, purchased the gun on October 31, 1969, because he liked the looks and because he wanted an authentic six-gun. He was twenty-nine years of age at the time. His father had been a police officer and plaintiff had been raised around guns. He had experience with guns in hunting and target shooting.

The single action revolver is one in which the hammer must be drawn back (cocked) before each shot is fired. There are three hammer or cocked positions, made possible by three notches on the lower portion of the hammer piece which is within the frame of the gun. The upper tip of the trigger, which is known as the sear, fits into the notches to hold the hammer in the chosen cocked position. The first position is known as the safety position "with the firing pin held safely away from the cartridge primer". The second is "half cock" with the hammer halfway back with the cylinder free to rotate for the purpose of loading. "The safety and half-cock notches are designed to prevent the trigger from being pulled". The third position is with the hammer all the way back and the revolver ready to fire.

A few days after he purchased the gun plaintiff went to a clubhouse on the Meramec River with friends. Using cans as targets, he shot a number of rounds from the newly purchased gun. He had just completed the reloading of his gun when one of his companions asked him for some shells. He put the gun in the "safety position"; he put the gun into the pocket of his hunting jacket; stepped over to a concrete platform where the cartridge belt was lying; knelt to pick up the cartridges and as he did so the gun fell from his pocket to the concrete platform a distance of about one foot and discharged, striking plaintiff on the left side of the face.

The plaintiff's expert witness testified, and the jury could reasonably have found, that the gun was caused to discharge because the hammer spur received a sharp blow, causing the sear tip to be fractured and displaced, allowing the hammer to slip out of the safety notch, causing the firing pin to strike the cartridge.

The Colt Single Action Army Revolver was first produced in 1873. It continued in production until 1941 when production was suspended because of wartime production needs. The gun went back into production in 1956.

Defendant was aware that there were problems with the breakage of the sear. It had always had such problems. If the sear were changed defendant would have to change the notch in the hammer and make some change inside the frame. There was no true safety in this gun. A modern safety, which places a "physical block" between the fire pin and the cartridge, could be placed on this gun.

Some changes had been made in the gun through the years. The changes included a change in the height of the front sight, the redesign of the base pin and the diameter of the barrel. The guns first put into production were available only as a .44 caliber and later as a .45. Further modifications have been made so that today they are also available in the .38 special and .357 magnum. Plaintiff's gun was a .357 magnum which also accommodates the .38 special. No change has been made in the trigger-sear.

Defendant adroitly presents us with a novel issue with respect to the theory of strict liability. It is agreed that the principle of strict liability in tort, though of recent development, is now firmly rooted into the law of this State. Keener v. Dayton Electric Manufacturing Company, 445 S.W.2d 362 (Mo.1969). Defendant, however, contends that it is entitled to judgment as a matter of law because the gun involved is "an exact replica" of the gun which dates back to 1873 and thus does not come within the purview of the strict product liability doctrine. Also, because the plaintiff knowingly purchased the gun as a replica, nothing in its design and construction can be considered a defect.

Defendant concedes, that except for its claim that this is a replica and thus not within the purview of the cases on strict liability, the jury could reasonably have found that the gun was defective in design according with Higgins v. Hardeman, Inc., 457 S.W.2d 943 (Mo.App.1970). Defendant's expert witness acknowledged that Colt had always had trouble with the sear; it had known for years that it was fragile and likely to break. Plaintiff had no knowledge of this defect. Plaintiff's expert, as noted above, testified that the fracture and displacement of the sear caused the gun to discharge.

The thrust of defendant's argument is that any current reproduction of an article of commerce, which the manufacturer considers to be of an historic or nostalgic in-terest, irrespective of its nature, should be exempted from the rule of strict liability in tort.

We confine ourselves to the facts presented to us in this case. The reason for the rule has been restated by various writers in a variety of ways. The most succinct is that of William L. Prosser, The Fall of the Citadel, 50 Minn.Law Review, 791, at Page 799:

"The public interest in human safety requires the maximum possible protection for the user of the product, and those best able to afford it are the suppliers of the chattel. By placing their goods upon the market, the suppliers represent to the public that they are suitable and safe for use; and by packaging, advertising and otherwise they do everything they can to induce that belief."

The gun which plaintiff purchased was not of ancient manufacture nor marketed under the commercial practices of 1873. This was not a museum piece sold to be mounted on velvet and encased in a frame. This gun was intended to be used for the same purpose as any handgun in the Colt line. The Colt Single Action Revolver was one of the principal items in the Colt line until 1941. Colt was aware of the problem with the sear when the gun went back into production in 1956, but made no change in that mechanism. Defendant contends that if it modified the sear or if it included a true safety on the gun it would not be an authentic replica. However, among the other changes noted above, this gun has been modified to accommodate the hotter load, high velocity, more destructive .357 magnum cartridge. Apparently making the weapon more dangerous will not affect its authenticity, making it safer would.

 While not a necessary element to plaintiff's case, the seller's strict liability may be enlarged by express representations. William L. Prosser, *supra,* at page 834. In Greenman v. Yuba Power Products Co., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377

P.2d 897 (Calif.1962) it was noted that the seller's literature described the product as being of rugged construction. Defendant here, provided an instruction pamphlet which was read by plaintiff. It stated, "Your Colt Single Action Army Revolver is one of the most simple, rugged and dependable handguns ever manufactured." The same pamphlet places this gun in the same category with its other guns when the user is told that "All Colt revolvers and automatic pistols are built to exacting standards of engineering and manufacturing . . . " These statements do not comport with a gun having a fragile sear.

The gun in this case is an article of recent manufacture, placed on the market by defendant, which it knew would be used without inspection for defects, which proved to have a defect; a defect in design which, in this case, was in fact known by defendant to exist. The gun, as found by the jury, was being used in a manner reasonably anticipated by defendant.

All the reasons that have brought the myriad of cases within the scope of strict liability exist in this case. Defendant has not cited and our research has not revealed any authority which would support defendant's contention. We see no reason to engraft an exception to the rule of strict liability in tort in this case. The trial court properly overruled defendant's motion for judgment.

Defendant next contends that verdict directing Instruction No. 3 is erroneous because it omitted an essential element of plaintiff's case against Colt. That instruction reads as follows:

## INSTRUCTION NO. 3

"Your verdict must be for plaintiff if you believe:

"First, defendant Goodman's, Inc. sold the revolver, and

"Second, the revolver, as sold, was defective and therefore dangerous when put to a use reasonably anticipated, and

"Third, when plaintiff bought the revolver it was in substantially the same condition as before he purchased it, and

"Fourth, plaintiff used the revolver in a manner reasonably anticipated and was damaged as a direct result of the revolver being defective."

M.A.I. 25.04 Modified.

Plaintiff also submitted and the Court gave Instruction No. 2, which reads as follows:

## INSTRUCTION NO. 2

"Your verdict must be for plaintiff if you believe:

"First, defendant Colt Industries, Inc., manufactured the revolver, and

"Second, the revolver, as manufactured, was defective and therefore dangerous when put to a use reasonably anticipated, and

"Third, when plaintiff bought the revolver it was in substantially the same condition as when manufactured, and

"Fourth, plaintiff used the revolver in a manner reasonably anticipated and was damaged as a direct result of the revolver being defective."
M.A.I. 25.04

It is quite obvious that it was plaintiff's intention to direct Instruction No. 2 against Colt and Instruction No. 3 against Goodman's. In those cases where there is more than one defendant clarity dictates that each verdict directing instruction designate the party against whom the instruction is directed. As in Cash v. Bolle, 423 S.W.2d 743 (Mo.1968), the jury

could have brought in a verdict against Colt under Instruction No. 3. It is, therefore, evident that Instruction No. 3 must stand the test of a verdict directing instruction against Colt.

It is the claim of defendant that the instruction fails to meet the standard set forth in Williams v. Ford Motor Co., 411 S.W.2d 443 (Mo.App.1966) because it does not require a finding that the gun reached plaintiff without substantial change in the condition in which Colt delivered it to Goodman's.

An instruction which directs a verdict must ordinarily require a finding of all of the elements of plaintiff's case. However, it is not erroneous to omit undisputed or uncontradicted elements from an instruction. Celatron, Inc. v. Cavic Engineering Co., 432 S.W.2d 794 (Mo.App. 1968). In M.A.I., page XLIX, we are admonished to make the submission as simple as possible. "The Supreme Court has repeatedly said that those facts not in dispute need not be hypothesized".

In this case the fact that the gun in question was delivered from Colt to Goodman's to plaintiff without substantial change was conceded. Defendant's own testimony was to the effect that the sear was fragile as manufactured and that they were aware of it. In the opening statement, defendant told the jury that the gun was shipped in by Colt and Goodman's sells the gun without doing anything to it. Defendant called the president of Goodman's as a witness and he testified that the gun was sold exactly as it was received from Colt.

Instruction No. 3 contained all the necessary elements of plaintiff's case against Colt which were in dispute and therefore, it was not erroneous.

The judgment is affirmed.

SMITH, P. J., and KELLY, J., concur.