OPINION
Appellant, Feno Monaco, appeals the decisions of the Portage County Court of Common Pleas granting summary judgment to appellees, Browning Arms Company ("Browning") and Red Fox Gun Club, Inc. ("Red Fox").
On September 21, 1996, Edward Monaco ("Edward") invited his nephew, appellant, to practice target shooting at the Red Fox Cub Club, Red Fox,[1] which was located in Shalersville, Ohio. Red Fox typically did not employ safety personnel. At the time of the accident, appellant and his uncle were positioned about ten feet apart from each other, with no partition separating them. Edward fired his Browning 1886 lever-action rifle ("Browning 1886") and the firearm jammed. As Edward attempted to release the jammed bullet, by working the lever, the rifle discharged striking appellant in the hip. The Browning 1886, which was designed as a functional replica of a firearm used in the late 1800's, was designed without an external safety.
Appellant filed actions against: Edward; Dick's Gun Room, the retail store where Edward purchased the rifle; Browning, the manufacturer of the rifle; Red Fox, the private shooting range; and, the Lafarge Company and Standard Slag Company,[2] which are companies that own Red Fox. Appellant's claim against Red Fox, as the operator of the shooting range where the accident occurred, was based on negligence in design and operation of the shooting range. Appellant's claim against the manufacturer of the rifle, Browning, were based on defective design, negligent design, and failure to warn consumers of the dangers associated with the firearm.
Browning moved for summary judgment. In its motion, Browning argued that the danger posed by the Browning 1886 was "open and obvious" and that Edward's actions were the proximate and superceding causes of appellant's injuries. In support of its motion, Browning presented evidence, including affidavits and depositions, showing that: the Browning 1886 is "a commemorative piece offered in the spirit of a replica;" the Browning 1886 is not defective when used as intended; the dangers of a lever-action rifle are "open and obvious;" Edward Monaco's misuse of this rifle was an intervening and superceding cause of appellant's injuries; and, that the benefit of owning a commemorative piece, outweighs the risk posed by the rifle's lack of an external, manual safety.
Appellant opposed Browning's motion for summary judgment and argued that the Browning 1886 was not introduced as a replica or commemorative piece. In support of his argument, appellant pointed to the Browning 1886 User Manual, which provides that: "The design is essentially unchanged from the original version John M. Browning patented in 1884." By way of comparison, appellant also introduced the Winchester 1886 User Manual, which provides that: "The Winchester 1886 of today is a careful reproduction of one of the original configurations made over 110 years ago." The Winchester 1886 is equipped with an external, manual safety.
Appellant supported his argument in opposition to summary judgment with affidavits. In Edward's affidavit, he stated that he attempted to release the jammed bullet by keeping the butt of the stock under his left armpit while pointing the gun toward the ground. He held the barrel of the gun with his right had and the four fingers of his left hand were in the lever's loop. As force was applied to the lever, the jammed bullet fell from the chamber, the next round entered the chamber, and the gun fired striking appellant. Edward further testified that he did not intentionally point the gun at appellant and that he did not believe that he pulled the trigger.
In expert witness George Greene Jr.'s ("Greene") affidavit, he stated that lever-action rifles, including the Browning 1886, can jam and that the absence of a manual safety is a design defect. In Greene's opinion, this defect creates a risk which outweighs the benefits of the design. Despite this, Greene stated that the Browning 1886 is not defective if the user keeps it on his shoulder. He also opined that Edward must have inadvertently touched the trigger with his index finger.[3]
On February 1, 2000, the trial court granted summary judgment to Browning, without Civ.R. 54(B) language, and found that: because the Browning 1886 rifle was a replica of a firearm used in the "Old West," it's lack of an external, manual safety did not constitute a design defect; the testimony of appellant's expert witness, Greene, consisted of personal conclusions and were not supported by scientific, engineering or factual basis; the Browning 1886 rifle's lack of an external, manual safety was an open and obvious risk which was known to Edward Monaco; and, the proximate and superceding cause of appellant's injury was Edward's unsafe handling of the Browning 1886 rifle, not a design defect. On May 18, 2000, the court denied appellant's motion for reconsideration of its interlocutory order.
Red Fox subsequently moved for summary judgment. In support of its motion, Red Fox attached the depositions of Edward, appellant, and Greene. Appellant filed a brief in opposition also supported by affidavits. On May 18, 2000, the trial court granted summary judgment and found that: appellant was a licensee; as a licensee Red Fox owed appellant "the duty only to refrain from willfully or wantonly injuring him"; there was no evidence presented to show such conduct on the part of Red Fox; and, Red Fox "had no duty to provide a range safety officer or barriers between shooting stations. From these judgment entries, appellant now assigns the following error:
 "[1.] The trial court erred in granting summary judgment to Browning Arms Company and in overruling Feno Monaco's motion for reconsideration of that order because fact questions exist as to whether the rifle was negligently designed, whether the rifle was defectively design [sic], whether the rifle's warnings were adequate, whether Monaco's expert [sic] testimony was reliable, whether Edward Monaco's conduct was the only cause of the accident and whether Edward Monaco's conduct was a superceding cause of the accident.
 "[2.] The trial court erred in granting summary judgment to defendant, Red Fox Gun Club, Inc., because questions exist as to whether Feno Monaco was an invitee or licensee and whether the shooting range was negligently operated and/or designed."
Red Fox assigns the following cross assignments of error:
 "[1.] The absence of a ranger or partition at RFCG [Red Fox] was an open and obvious condition from which [sic] RFGC [Red Fox] owed appellant no duty to warn or protect.
 "[2.] Regardless of whether appellant was a licensee or invitee, no actions of RFGC [Red Fox] proximately caused injury to appellant.
 "[3.] Regardless of whether appellant was a licensee or invitee, appellant voluntarily assumed the risk."
 On appeal, a court of review must conduct a de novo
review of a trial court's grant or denial of summary judgment. Tackas-Davis Concorde Castings (Dec. 15, 2000), Lake App. No. 99-L-035, unreported, 2000 Ohio App. LEXIS 5920, citing Lorain Nat'l Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. In its review of a motion for summary judgment, the appellate court must construe all the evidence in a light most favorable to the party opposing the motion. Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 4-47.
"Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try." Norris v. OhioStd. Oil Co (1982), 70 Ohio St.2d 1, 2. Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Pursuant to Civ.R. 56(C), "summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Indus., Inc. v. Applied Cos. (1983), 67 Ohio St.3d 344,346, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. After this initial burden has been satisfied, a reciprocal burden arises, pursuant to Civ.R. 56(E), for the non-moving party to set forth specific facts showing that a genuine issue for litigation exists.
To determine if summary judgment was appropriately awarded to Browning, we must decide whether, when construing the evidence most strongly in favor of appellant, a genuine issue of fact exists as to whether: the Browning 1886 was defectively designed; negligently designed; and, contained adequate warnings. We will first address whether summary judgment was proper on appellant's claim of defective design against Browning. R.C. 2307.75, which governs when a product is defective in its design or formulation, provides, in relevant part, that:
 "(A) Subject to divisions (D), (E), and (F) of this section, a product is defective in design or formulation if either of the following applies:
 "(1) When it left the control of its manufacturer, the foreseeable risks associated with its design or formulation as determined pursuant to division (B) of this section exceeded the benefits associated with that design or formulation as determined pursuant to division (C) of this section;
 "(2) It is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.
 "(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:
 "(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
 "(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;
 "(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
 "(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.
 "(C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:
 "(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;
 "(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;
 "(3) The nature and magnitude of any foreseeable risks associated with such an alternative design or formulation.
"***
 "(E) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.
 "(F) A product is not defective in design or formulation if, at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product, unless the manufacturer acted unreasonably in introducing the product into trade or commerce."
 Appellee contends that an external safety would substantially impair the usefulness or intended purpose of the firearm and, thus, the Browning 1886 falls within the statutory exceptions for design defect claims. Appellant argues that the firearm does not fall within the purview of either of the exceptions contained within R.C. 2307.75(E) and (F), because other manufacturers have designed and sold lever-action replicas of rifles used in the Old West which incorporate external manual safeties.[*] Therefore, he argues, an external manual safety does not substantially impair the usefulness or the intended purpose of a replica or commemorative firearm, including the Browning 1886.
 [*] We note that Bender v. Colt Industries, 517 S.W.2d 705 (1974) and Hammond v. Colt Industries Operating Corp., 656 A.2d 558 (1989), cited by the appellant, are inapplicable to the instant case. Neither of these cases discuss the exceptions to product liability enumerated in R.C. 2307.75(E) and (F). Additionally, in Bender, Colt reissued a gun with a known latent defect, while in the instant case Browning produced a replica of a rifle, which patently lacked an external, manual safety. The court in Hammond did not address the defendant's defense that the gun was manufactured as a replica of a 19th Century gun, which was originally designed when appropriate safety mechanisms were not in existence, and that the manufacturer wanted to protect the integrity of the design by not installing a safety mechanism.
In his affidavit, Larry D. Nelson ("Nelson"), chief engineer for Browning, stated that, "[t]he Browning 1886 is a reproduction rifle based on an original John M. Browning design." And in his deposition, Nelson stated that because the Browning 1886 was introduced as a commemorative piece, in the spirit of being a replica, the manufacturer did not want to mar the exterior with an external safety mechanism, such as a trigger block or hammer block. He explained that because an inertial firing pin and firing pin lock were installed to make the gun safer than the original design, an exterior "hammer block on it would be repetitive and essentially not add anything to the gun itself." However, these internal features do not prevent accidental discharge of the firearm due to pressure on the trigger.
Civ.R. 56(E) requires that a party opposing summary judgment, "*** set forth specific facts showing that there is a genuine issue for trial." We conclude that appellant met his Civ R. 56(E) burden by establishing that Winchester introduced a Model 1886, also a replica, equipped with an external, manual safety. The Winchester Model 1886, which was manufactured and sold after the Browning 1886 was introduced, creates a factual question as to whether the Browning 1886's physical appearance actually is essential to its use or intended purpose. While the Browning 1886 was designed and intended to be used as a functioning replica of a firearm first introduced in 1886, appellant has raised a genuine issue of material fact as to whether an external trigger safety is essential to the firearm's intended use or purpose. Even Edward testified that, while the history of the rifle may have influenced his purchase of the Browning 1886, he "only had an interest in it as a rifle to shoot with." Summary judgment was not proper on the claim of defective design.
We will next address appellant's claim of negligent design. The common-law action of negligent design survived the enactment of the Ohio Products Liability Act. Carrel v. Allied Products Corp. (1996),78 Ohio St.3d 284, paragraph one of the syllabus. The doctrines of strict products liability and common law negligence cases are viewed as complementary but separate. Id. at 287. Common law negligence is predicated on the principle that a manufacturer of a product should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury. See e.g. Larsen v. GeneralMotors Corp., (8th Cir. 1968), 391 F.2d 495.
It is generally accepted that external safeties are regularly used by firearm manufacturers. However, the only evidence offered to demonstrate that the Browning 1886 was defective, and thereby negligently designed, was provided by Greene. Greene testified that the Browning 1886 was not defective in design when held on the shoulder, as the rifle was intended to be used, but opined that injuries due to accidental trigger contact could be avoided by the addition of an external, manual safety.
In determining whether Greene's testimony was admissible, we begin our analysis with a consideration of Evid.R. 702, which governs the admissibility of expert testimony. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 687 N.E.2d 735. Evid.R. 702 provides:
A witness may testify as an expert if all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 "(2) The design of the procedure, test, or experiment reliably implements the theory;
 "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 While there is no dispute that Greene testified about matters beyond the knowledge of lay persons, under Evid.R. 702(A), Greene's testimony did not comport with Evid.R. 702(B) or Evid.R. 702(C). Greene stated that he is an expert in "anything safety." However, he has never: held a patent on a firearm design; worked for any major firearm manufacturer; designed a firearm; designed a modification, for which credit has been given to him; been through any formal firearms or firearm design classes; worked with any firearm design engineers; written a book or article on firearms manufacture. Greene is a graduate of Texas A M University with a degree in mechanical engineering and has stated that he has testified in approximately two hundred cases involving firearms. Greene testified that his opinion, that the Browning 1886 was defectively designed, was based on theories that have been accepted in the firearm industry. However, Greene offered no scientific, engineering, or factual basis for his conclusion that the Browning 1886 was defective without an external safety.
Due to our conclusion that Greene's testimony did not comport with Evid. R. 702, his testimony cannot support appellant's Civ.R. 56(E) burden. Regardless, Greene acknowledged that when used properly, the Browning 1886 is not defective. Having reviewed the evidence before the trial court, in a light most favorable to appellant, we conclude that reasonable minds could come to but one conclusion, adverse to appellant. Summary judgment was properly granted to appellee on the claim of negligent design.Next we will address appellants' claim that Browning failed to provide adequate warning regarding the dangers associated with the Browning 1886. R.C. 2307.76(B) provides, in pertinent part, that: "A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge." "In a products liability case, where there are allegations of failure to warn, or failure to adequately warn, there will be no liability unless it can be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." Crislip v. TCHLiquidating Co. (1990), 52 Ohio St.3d 251, paragraph two of the syllabus.
Browning provided the following warnings: point the rifle in a safe direction; i.e. only at objects you intend to shoot; always keep your rifle's hammer in the half cock position even if you are certain the rifle is unloaded; and, do not snap the hammer on an empty chamber — the chamber may not be empty. Appellant argues that he did not know that releasing the jam would cause another round to enter the chamber. He thought the chamber would be empty once the jam released. Browning's literature warns the user "Do not snap the hammer on an empty chamber — the chamber may not be empty!" and "Treat every gun with the respect due a loaded gun, even though you are certain the gun is unloaded."
Despite Browning's warning that a chamber may, in fact, not be empty and the obvious dangers associated with a loaded gun, Edward accidentally pointed the rifle in the direction of the appellant, causing the appellant to sustain physical injury. Regardless of whether Edward thought the chamber would be empty after the jam released, he was responsible for keeping the rifle pointed in a safe direction. By his own admission, he failed to do so. Thus, reasonable minds could come to only one conclusion, that Browning provided adequate warning regarding the dangers associated with pointing a loaded weapon at an object that one does not intend to shoot.
In appellant's second assignment of error, he argues that the trial court erred in granting summary judgment in favor of Red Fox. In support of his argument, appellant contends that he was a business invitee, not a licensee, and thus, the trial court applied the wrong duty of care owed to the appellant. In response, Red Fox argues that Edward's negligence caused appellant's injuries and that appellant has failed to support his claim that the range was negligently designed or that Red Fox fell below the standard of care in its operation of the shooting range. Generally, in order to determine the standard of care owed, the plaintiff's legal status must first be established.
The Supreme Court of Ohio has used the economic, or tangible, benefit test in order to distinguish the status of an invitee from that of a licensee. Provencher v. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265,266-267. An invitee has been defined as "a business visitor [or business invitee], that is, one rightfully on the premises of another for the purposes in which the possessor of the premises has a beneficial interest." Scheibel v. Lipton (1951), 156 Ohio St. 308, at paragraph one of the syllabus. The owner of the premises owes an invitee the duty to exercise ordinary care and to protect him by maintaining the premises in a safe condition. Provencher, supra, at 266.
"Conversely, a person who enters the premises for his own pleasure or benefit, and not by invitation, is a licensee." Provencher, supra, at 266. A licensor "is not liable for ordinary negligence and owes the licensee no duty except to refrain from wantonly or willfully causing injury." Id. The existence of a duty is a question of law for the court to determine. Mussivand v. David (1989), 45 Ohio St.3d 314, 318. "[T]he question of whether undisputed facts, essential to determination of the plaintiff's status, show him to be a licensee or invitee, is a legal question for the court." Wiley v. National Garages, Inc. (1984),22 Ohio App.3d 57, 62. The parties dispute whether Red Fox received an economic benefit by allowing guests at the shooting range.
Regardless of whether appellant was an invitee or a licensee, he has no cause of action regarding his claims that Red Fox was negligently designed. Appellant failed to establish that Red Fox did not use ordinary care or kept the premises in an unsafe condition; i.e. appellee had no duty to provide range officers or barriers between shooting stations. There is no statutory requirement that a gun club employ range officers during all hours of operation or utilize partitions between shooters. O.A.C. 1501:31-29-03(F), enacted after this incident, provides:
 "Activities of persons using a public or private shooting range should be monitored by members or persons(s) authorized as range safety official (s) to prevent unsafe acts during organized shooting activities. During practice or casual use of a shooting range, range safety official(s) should be designated and generally available to evaluate any concerns regarding unsafe range use. However, this rule does not require full-time supervision of range facilities during all hours of operation."
 Additionally, appellant had been to Red Fox several times and was aware that there were no barriers in the gun club and that there were no safety personnel available. Richard Carson Whiting, author of the National Rifle Association Range Manual, testified that the utilization of range officers is recommended and that if a regular officer is not present someone should be given that duty. Despite this, after evaluating Red Fox, he concluded that: the gun club's design was not faulty; Edward's actions were the cause of the accident; and, no action or inaction of the gun club contributed to this accident.
Having examined the evidence before the trial court, in a light most favorable to appellant, we believe that reasonable minds could come to but one conclusion, adverse to appellant. Thus, the trial court did not err in granting summary judgment to Red Fox, as a matter of law. Appellant's second assignment of error is without merit. Due to our resolution of appellant's second assignment of error, Red Fox's cross assignments of error are moot.
Based on the foregoing, appellant's first and second assignments of error have no merit except his claim of defective design against Browning. This case is remanded for proceedings consistent with this opinion.
JUDGE ROBERT A. NADER, O'NEILL, P.J., concurs, GRENDELL, J., concurs in part and dissents in part with concurring and dissenting opinion.
[1] Red Fox is a private shooting range owned by Standard Slag Company. Edward had been a member of Red Fox since 1994.
[2] The parties stipulate that the real party in interest for the Lafarge Corporation is Standard Slag Company. On October 16, 2000, the trial court filed an agreed order and judgment entry in which it construed Red Fox's motion for summary judgment as a motion on behalf of Standard Slag Company and granted the motion in Red Fox's favor. Appellant settled and dismissed his claims against Edward and Dick's Gun Room. Red Fox admits that Red Fox Gun Club is known as Red Fox Gun Club Inc., and, thus, they have been treated as the same party.
[3] While Greene stated that it was possible that the firearm could have discharged without Edward touching the trigger, Greene testified that Edward "touched it with his index fingers [sic], in my opinion, sir, even though he didn't believe that he did.